UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VICTORIA JEFFORDS,<br><br>    Plaintiff,<br><br>    v.<br><br>BP PRODUCTS NORTH AMERICA INC., incorrectly sued as BP CORPORATION NORTH AMERICA, INC., MC INDUSTRIAL, INC., FLUOR CONSTRUCTORS INTERNATIONAL, INC., and LINK-BELT CONSTRUCTION EQUIPMENT COMPANY,<br><br>    Defendants. | CAUSE NO.: 2:15-CV-55-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant Fluor Construction International, Inc.'s, Motion for Summary Judgment [ECF No. 175], filed on September 18, 2018. For the reasons discussed below, the Court GRANTS the Defendant's Motion for Summary Judgment.

**BACKGROUND**

On December 22, 2014, Donald Jeffords (Jeffords) filed a Complaint [ECF No. 6] in Lake Circuit Court against BP Corporation North America, Inc. (BP), MC Industrial, Inc. (MCI), Link-Belt Construction Equipment Company (Link-Belt), and Fluor Construction International, Inc. (Fluor). The Plaintiff alleged negligence claims against BPI, MCI, and Fluor (Pl.'s Compl. ¶¶ 7–11) and a product liability claim against Link-Belt (*id*. ¶¶ 12–17). Less than a year after filing his complaint, Jeffords passed away; Victoria Jeffords was substituted as the Plaintiff as the Administrator of her late husband's estate [ECF No. 57].

Defendants BP [ECF No. 94], MCI [ECF No. 97], and Link-Belt [ECF No. 103] filed motions for summary judgment, which the Court granted on August 10, 2018 [EF No. 168]. Defendant Fluor filed a Motion for Summary Judgment on September 18, 2018 [ECF No. 175]. The Plaintiff filed her response on November 11, 2018 [ECF No. 181] and Fluor filed a reply on December 17, 2018 [ECF No. 187].

## STATEMENT OF FACTS

On May 4, 2013, Jeffords was working for Central Rent-a-Crane (Central Crane) at the BP Refinery in Whiting, Indiana, when he fell from a crane, the Link-Belt RTC-80110. Fluor had entered into a contract with BP to act as the construction manager on the Whiting Modernization Project (WMP Project). BP had engaged Fluor to provide engineering, procurement, and construction management services at the site, specifically for all construction activity occurring in the lakefront area near a water treatment facility, where Jeffords fell from the crane. The BP-Fluor contract stated:

> 14.05: Notwithstanding the other provisions of this Article 14, Contractor does not guarantee the Work against:
> 14.05.03: Defects in equipment purchased from equipment and material manufacturers and suppliers of Items furnished by Company or others.
> 43.01: Except as otherwise set forth in this Contract, nothing under this Contract shall be construed to give any rights or benefits in the Contract to anyone other than Company and Contractor, and all duties and responsibilities undertaken pursuant to this Contract will be for the sole and exclusive benefit of Company and Contractor and not for the benefit of any other party. (BP-Fluor Contract, BP000169, 191, ECF No. 157-1.)

Central Crane was a third-party contractor that had contracted with BP to provide crane services on the WMP Project. Fluor had no contractual relationship with Central Crane. The BP-Central Crane Contract stated:

ARTICLE 4: INDEPENDENT CONTRACTOR

4.01 In the performance of the Work, Contractor is an independent contractor, shall control the performance of the details of the Work, and shall be responsible for the results as well as responsible for ensuring that the performance of the Work is conducted in a manner consistent with appropriate safety, health, and environmental considerations, including, but not limited to, Company's policies thereon…The presence of and the observation and inspection by Company's representative(s) at the Work Site shall not relieve Contractor from Contractor's obligations and responsibilities under this Contract. (BP-Central Contract, BP000008, ECF No. 157-3.)

Prior to his death, Jeffords was not deposed and his testimony was not preserved. In Jeffords' Answers to Defendant Fluor's Interrogatories, Jeffords stated that his co-workers, Rick Morales and Mitchell Surovik, foreman Mark Richardson, and an unknown electrician from Meade Electric were in the area when he fell from the crane, but that none of them witnessed his fall. Both Morales and Richardson were deposed, and both testified that they did not see precisely how the incident occurred.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that

requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**ANALYSIS**

Fluor contends that summary judgment is appropriate for the following reasons: (1) Fluor owed no duty to Central Crane's employees; and (2) there is no admissible evidence from which a jury could reasonably determine the proximate cause of Jeffords's fall from the crane. The Plaintiff argues that: (1) Fluor owed Jeffords a contractual duty of care based upon its contract with BP; (2) Fluor assumed a duty of care to Jeffords when it assumed duties not specified in the BP-Fluor contract; and (3) there is sufficient evidence of proximate causation of Jeffords' fall such that summary judgment should be denied.

Because the Court is exercising diversity jurisdiction over this case, Indiana substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). A plaintiff must satisfy three elements for a negligence claim under Indiana law: (1) that a defendant owed a duty to the plaintiff; (2) that the defendant breached the duty by allowing its conduct to fall below the

4

applicable standard of care; and (3) a compensable injury was proximately caused by the defendant's breach. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citing *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). The Plaintiff argues that Fluor breached a duty of care to Jeffords because Jeffords fell from a catwalk on a crane at the worksite that was only thirteen-inches wide and seven-feet, one-inch above the ground but lacked a protected edge or handrail in violation of OSHA regulations.

### A. Contractual Duty Owed

Fluor entered into a contract with BP to provide construction management services. Under Indiana law, construction managers owe a duty for job site employee safety in two circumstances: (1) when the construction manager has contractually assumed a duty for job site safety; or (2) when the construction manager voluntarily assumes a duty for job site safety. *Hunt Constr. Grp. v. Garret*, 964 N.E.2d 222, 225 (Ind. 2012) (citing *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983)). In Indiana, the long-standing rule is that "a principal will not be held liable for the negligence of an independent contractor." *Ryan*, 72 N.E.3d at 913. "This means that when a subcontractor fails to provide a reasonably safe workspace, the general contractor will not incur liability for employee injury, even when such injury is proximately caused by the subcontractor negligence. The rationale behind this rule is that a general contractor has little to no control over the means and manner a subcontractor employs to complete the work." *Id.* at 913 (citing *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007). There are exceptions to this rule, including when a contractual duty of care imposes a specific duty on the principal. "If a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated on the contractual duty." *Stumpf*, 863 N.E.2d at 876.

5

It is undisputed that there is no contract between Fluor and Central Crane. The issue in this case, then, is whether Fluor's contract with BP created a duty of care that extended to Jeffords. The Plaintiff argues that, through Fluor's contract with BP, Fluor assumed a duty "to whomever is within the scope of the duty regardless if they are parties to the contract or not." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.) The Plaintiff argues that Fluor assumed a non-delegable duty of care through its contract with BP, and that it is of no consequence that Central Crane and Jeffords were not parties to the BP-Fluor contract. (*Id.*) The Plaintiff cites to the Court's previous summary judgment ruling and argues that the Court's statement that, pursuant to the BP-Fluor contract, Fluor "assumed responsibility for the safety for its personnel and the personnel of others" (Op. and Order at 11, ECF No. 168 (internal quotation marks omitted)), is proof that the contract "expressly evince[s] that Fluor has a safety duty for the project site and for Jeffords, an employee of a subcontractor, in particular and expressly" (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8.) Fluor argues that the contract does not impose a duty of care to Jeffords, who was the employee of a third-party contractor. Fluor contends that the BP-Central Crane contract is in harmony with the BP-Fluor contract, and that the former's provisions make Central Crane solely responsible for the safety of its own employees. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 11.) Fluor notes that the Court, in its previous Opinion and Order, did not actually consider the language of the agreement as it relates to Fluor, as that issue was not before it. (Def.'s Reply in Supp. of Mot. for Summ. J. at 4.) Fluor contends that the BP-Fluor contract language explicitly provides that it is not for the benefit of any third-party, and that includes Central Crane and Jeffords. (*Id.*)

"Whether a duty of care exists is a question of law for the court to decide[,]" and "[a]bsent a duty, there can be no negligence." *Ryan*, 72 N.E.2d at 913 (citations omitted). The

Court did previously state that the BP-Fluor contract provides that "Fluor assumed responsibility for the safety for its personnel and the personnel of others." (Op. and Order at 11 (internal quotation marks omitted).) The Court also noted that the contract "provides that Fluor is required to follow certain safety procedures, allows certain BP employees access to the site, provides that Fluor can procure certain material and equipment for use on the site, and limits which subcontractors Fluor may hire." (*Id.* at 11.) The Court made these observations regarding the BP-Fluor contract before concluding that "the contract between Fluor and BP establishes that the parties did not intend for BP to assume of a duty of care to the employees of Fluor and other subcontractors." (*Id.*) The Court was not considering the Fluor contract in connection with BP's contract with the Plaintiff's employee, Central Crane. When the Court cited the BP-Central contract separately, it noted that "the contract between BP and Central specifically delegated to Central the responsibility for ensuring that the work would be safely performed." (*Id*. at 10.) Nor was it considering the BP-Fluor contract as a whole to determine which specific duties Fluor contracted to provide to third parties.

The general rule in Indiana law is that "only parties to a contract or those in privity with the parties have rights under a contract." *Lake Cent. Sch. Corp. v. Jacob & Maciejewski, A.I.A. & Assocs., Architects P.C.*, 2011 WL 3159834, at *2 (N.D. Ind. July 26, 2011) (quoting *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312 (Ind. 1996)). A non-party, however, may enforce the contract if the non-party can demonstrate that he is a third-party beneficiary. *Id*. A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party, and in which the performance of the terms of the contract between two parties must necessary result in a direct benefit to a non-party which was so intended by the parties. *In re Estate of Von Wendesse*, 618 N.E.2d 1332, 1337 (Ind. Ct. App. 1993). The alleged third-party

7

beneficiary must show: (1) a clear intent by the actual parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract. *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001).

"Whether or not one is a third-party beneficiary is a fact question dealing with the intent of the contracting parties." *Id.* at 624. Among these factors, the intent of the contracting parties to benefit the third-party is the controlling factor. *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 276 (Ind. Ct. App. 2001). The intent necessary to the third-party's right to sue is not a desire or purpose to confer a particular benefit upon the third-party nor a desire to advance his interest or promote his welfare. *Id*. at 275–76. Rather, the intent manifested must be that the promising parties shall assume a direct obligation to the alleged third-party. *Id.*

The BP-Fluor contract was not designed to confer a benefit to a third-party, namely the Plaintiff. The BP-Fluor contract specifically states that Fluor "shall not be responsible for . . . safety precautions of any . . . other third parties, of any tier including Company's Third Party contractors and vendors, providing services for the WMP Project." (BP-Fluor Contract, 14.03.01, BP000169, ECF No. 157-1.) Additionally, the BP-Fluor contract states that "nothing under this Contract shall be construed to give any rights or benefits in the Contract to anyone other than Company and Contractor." (*Id.*)

The BP-Central Crane contract states that Central Crane: "shall control the performance of the details of the Work, and shall be responsible for the results as well as responsible for ensuring that the performance of the Work is conducted in a manner consistent with appropriate safety, health, an environmental consideration, including, but not limited to, Company's policies thereon." (BP-Central Crane Contract, 4.01, BP000008, ECF No. 157-3.) The contract also states

that Central Crane is responsible for maintaining the safety of its own employees. The contract states: "Contractor agrees, as to its employees, agents, and representatives and those of any of its subcontractors and vendors as well as third parties, to accept the duty of and bear the responsibility for inspecting (and maintaining in a clean and safe state) the Contractors immediate Work Area and all machinery, equipment, facilities, supplies…" (BP-Central Crane Contract, 6.04.) Further, the Contract notes: "[t]he inspection and approval by Company's representative of any equipment or associated items shall not relieve Contractor of any of its responsibilities and duties hereunder." (BP-Central Contract, 11.03.)

Fluor's construction management services were rendered for the sole benefit of BP, the project owner. In this case, where the BP-Fluor contract provides that BP and Fluor intended no benefit to non-parties, including the Plaintiff, it does not support a duty of job site safety. *See, e.g.*, *Hunt*, 964 N.E.2d at 227–28. In comparison, the Central Crane contract unequivocally delegates responsibility to Central Crane for project safety, equipment safety, and employee safety. "Under Indiana contract law, the construction of an unambiguous contract is a question of law for the court to decide." *Innovative Piledriving Prod., LLC v. Unisto Oy*, 2006 WL 1843498, at *5 (N.D. Ind. June 30, 2006). "The standard for determining contractual ambiguity is whether a reasonable person would find the contract subject to more than one interpretation. In applying this standard, courts will give a word or phrase its usual meaning unless the contract, when taken as a whole and considering its subject matter, makes clear that the parties intended another meaning." *Zimmer, Inc. v. Nu Tech Med., Inc.*, 54 F. Supp. 2d 850, 860 (N.D. Ind. 1999) (citing *Trs. of First Union Real Estate v. Mandell*, 987 F.2d 1286, 1291 (7th Cir. 1993)). Ambiguous contracts, subject to more than one construction, are inappropriate for summary judgment. *Innovative Piledriving Prod., LLC*, 2006 WL 1843498 at *5. There is no ambiguity here. The

9

Plaintiff has failed to meet his burden to establish himself as a third-party beneficiary to the BP-Fluor Contract.

The Plaintiff argues that the plain reading of these contracts means that Fluor is "free to carry out any inspection or observations incompetently with no obligations to any party due to Central Crane also having a contractual safety duty." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.) Further, the Plaintiff contends that if the Court finds that Fluor owes no duty to the Plaintiff, it contradicts its previous summary judgment ruling. (*Id*.) The Court does not agree.

A finding that Fluor did not owe a contractual duty of care to the Plaintiff does not mean that Fluor was permitted to carry out *its* duties incompetently. It means only that the BP-Fluor contract did not create and define a duty of care on Fluor that extended to the Plaintiff, as the employee of a third-party subcontractor, or his activities on the crane.

Importantly, the duty of care that Fluor owed to the Plaintiff was not previously before the Court. Neither was the concept of whether the Plaintiff was a third-party beneficiary of Fluor's contract with BP. When determining in its previous Opinion and Order whether BP owed the Plaintiff a duty of care with respect to his activities on the crane, the Court was presented with two contracts: BP's contract with Central Crane, and BP's contract with Fluor. The BP-Central Crane contract delegated to Central Crane responsibility to ensure that work would be safely performed, and included provisions emphasizing that Central Crane was an independent contractor who had full control and direction of the detail, manner, means, and methods of performing the work. Thus, the contract between BP and Central Crane demonstrated that the parties did not intend for BP to assume a duty to Central's Crane's employees, including the Plaintiff. BP also had a contract with Fluor in which, the Plaintiff argued, it assumed a contractual duty to keep the Plaintiff safe as he performed his duties on the crane. In considering

10

whether that contract created a duty on BP, the Court found no such language. Additionally, as the Court noted, while BP retained measures to require certain safety standards, the contract provided that Fluor assumed responsibility for the safety of its personnel and the personnel of others. This, the Court held, did not impose a general duty of care for safety on both parties. (Op. & Order 11 (citing *Hunt*, 964 N.E.2d at 230–31 (holding "that for a construction manager not otherwise obligated by contract to provide jobsite safety to assume a legal duty of care for jobsite-employee safety, the construction manager must undertake specific supervisory responsibilities beyond those set forth in the original construction documents").) In so holding, the Court was concerned solely with the duty of BP, not of Fluor. The Court, at that time, did not determine the extent of the duty Fluor assumed as a construction manager in light of the contractual language as a whole. Fluor, who was the actual construction manager for the WMP Project (as opposed to the landowner), having now filed its own motion for summary judgment, has rightly addressed its duty in light of the entirety of the contractual language, including the language that the duties and responsibilities under the Contract are for BP and Fluor's benefit only and not for the benefit of any third-party.

The Plaintiff's reliance on an isolated statement in the Court's ruling on other litigants' summary judgment motions cannot overcome the unambiguous contractual language.

**B.  Contractual Duty Assumed**

The Plaintiff also argues that, in addition to is alleged contractual duties, Fluor assumed a duty for safety based on its conduct and actions on the jobsite, that it violated. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10–11.) The Plaintiff contends that Fluor was responsible for safety above its contract obligation and assumed a duty to ensure the safety of the employees of

11

subcontractors, including against falls. (*Id*. at 10.) Fluor argues that it did not voluntarily assume a duty of safety for the Plaintiff. (Def.'s Reply in Supp. of Mot. for Summ. J. at 7.)

The Plaintiffs are correct that a duty of care may arise where one party assumes a duty, either gratuitously or voluntarily. *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983). The Plaintiffs contends that Fluor was responsible for safety above its contract obligation and cites deposition testimony to that effect. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10.) The Plaintiff cites Fluor's safety, hazard evaluation, and risk assessment for employees as evidence that it assumed a voluntary duty outside those that were set forth in the contract. The Plaintiff argues that Fluor then erred in its duties when it did not perform risk assessments of the crane operator's inspection duties or job tasks analysis. (*Id*. at 11.) Fluor argues that the duties to which the Plaintiff refers are, in fact, contractual duties. As such, Fluor did not assume any duties outside of the BP-Fluor contract. (Def.'s Reply in Supp. of Mot. for Summ J. at 8.)

As the Court noted previously, a construction manager, absent contractual provisions to the contrary, does not assume a duty of care for the safety of its independent contractors' employees when the construction manager inspects a site daily for violations of a project safety program, compiles safety reports that suggest corrective action should be taken, conducts weekly safety meetings that independent contractors are required to attend, and requires an independent contractor to initiate disciplinary procedures when safety programs and policies are violated. *Hunt*, 964 N.E.2d at 230–31. "[F]or a construction manager not otherwise obligated by contract to provide jobsite safety to assume a legal duty of care for jobsite-employee safety, the construction manager must undertake specific supervisory responsibilities beyond those set forth in the original construction documents." *Id.* at 230.

Thus, Fluor must have taken some step to assume an obligation outside the bounds of its contract. In this case, the Plaintiff has not presented evidence that demonstrates that Fluor performed more obligations than those required under the contract, and therefore has not established that Fluor assumed a conduct-based duty of care. In fact, the Plaintiff states that Fluor *did not* perform certain duties, which defeats its argument that Fluor assumed a duty in acting outside of the bounds of the BP-Fluor contract. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11.)

Therefore, the Court finds that the Plaintiff has not satisfied the first of the three elements necessary to establish a negligence claim under Indiana law—that the Defendant owed a duty to the Plaintiff. As a construction manager, Fluor could only be liable to the Plaintiff if it contractually or voluntarily assumed a duty for job site safety. The Plaintiff has failed to demonstrate the existence of a genuine issue of material fact on either point. "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). As such, the Court need not evaluate whether the Defendant breached a duty or whether the Defendant proximately caused the Plaintiff's injury.

## CONCLUSION

Therefore, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 175]. The Clerk will enter judgment in favor of all the Defendants and against the Plaintiff. The Motion for Certification of Final Judgment pursuant to Federal Rule of Civil Procedure 54(b) [ECF No. 170], filed by Defendants BP, MCI, and Link Belt is DENIED AS MOOT.

SO ORDERED on February 27, 2019.

                                                    s/ Theresa L. Springmann
                                                    CHIEF JUDGE THERESA L. SPRINGMANN
                                                    UNITED STATES DISTRICT COURT